PEN–YAN INVESTMENT,
INC., Respondent,

v.

BOYD KANSAS CITY, INC., Defendant,

and

Missouri Gaming Commission, Appellant.

No. WD 53038.

Missouri Court of Appeals,
Western District.

Aug. 26, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 30, 1997.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael W. Bradley, Asst. Atty. Gen., Jefferson City, for Appellant.

Frank Brancato, Kansas City, for Respondent.

Patrick J. Stueve, Kansas City, for Defendant.

Before EDWIN H. SMITH, P.J., and BERREY and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

This is an appeal by the Missouri Gaming Commission (the Commission) from a summary judgment for Pen–Yan Investment Inc., d/b/a B & G Amusement & Vending Co. (respondent) and the denial of the Commission's motion to dismiss respondent's first amended petition as to Counts II and III. In granting respondent's motion for summary judgment, the trial court declared invalid and unenforceable 11 C.S.R. 45–5.050(4)(E), a regulation promulgated by the Commission. This regulation prohibits holders of Class A and B Missouri gaming licenses granted by the Commission from, *inter alia*, socializing or transacting business with convicted felons.

Respondent, a company in the amusement and vending service business, entered into a service agreement with Boyd Kansas City, Inc., d/b/a Sam's Town Kansas City (Boyd), who was engaged in a riverboat gambling operation in Kansas City, Missouri, commonly referred to as Sam's Town Casino, for which Boyd held Class A and B Missouri gaming licenses. Charles C. Bengimina, a convicted felon, participated in the negotiation of the service agreement on behalf of his employer, respondent. Based on the service agreement and Charles C. Bengimina's participation in its negotiation, the Commission commenced a disciplinary action against Boyd for violating 11 C.S.R. 45–5.050(4)(E). In response to Boyd terminating its agreement with respondent as a result of the disciplinary action, respondent filed its petition for declaratory judgment, injunctive relief, and damages against the Commission and Boyd seeking, *inter alia*, to have the regulation declared invalid and unenforceable; or in the alternative, to have the regulation declared inapplicable to respondent, and, in either case, enjoining the Commission from preventing respondent from transacting business with Boyd or any other Class A and B licensees.

On appeal, the Commission alleges that the trial court erred: (1) in granting respondent's motion for summary judgment declaring 11 C.S.R. 45–5.050(4)(E) invalid and unenforceable because the Commission did not exceed its statutory authority in promulgating the regulation; and, (2) in overruling the Commission's motion to dismiss respondent's first amended petition as to Counts II and III for lack of jurisdiction, because § 313.840.2[1], as to the review of the Commission's decisions, grants exclusive jurisdiction to the Missouri Court of Appeals, Western District, and because respondent had not exhausted its administrative remedies.

We reverse and remand.

**Facts**

The facts in this case are not in dispute. Respondent is a Missouri corporation engaged in the amusement and vending service business. Its sole officer, director and shareholder is Peter Bengimina. Boyd is a Missouri corporation engaged in the business of riverboat gambling at its casino, Sam's Town, in Kansas City, Missouri.

On or about July 1, 1995, respondent and Boyd entered into a service agreement, negotiated in part by respondent's employee, Charles C. Bengimina, for respondent to place cigarette, video arcade and amusement machines in Sam's Town, for which Boyd held Class A and B Missouri gaming licenses. Charles C. Bengimina is a convicted felon, having been convicted in 1988 of bankruptcy fraud in the United States District Court for the Western District of Missouri.

As agreed, respondent placed amusement and vending machines in Sam's Town. Thereafter, on or about September 29, 1995, Boyd's counsel advised respondent by facsimile transmission that it was terminating their agreement effective October 15, 1995, because it had been advised by the Commission

[1]. All statutory references are to RSMo 1994, unless otherwise indicated.

that the transaction of business with respondent was or could be a violation of 11 C.S.R. 45.5.050(4)(E). On November 16, 1995, the Commission filed a disciplinary action against Boyd alleging that it violated 11 C.S.R. 45–5.050(4)(E) in that it had "associated in business affairs with a person, [Charles C.] Bengimina, who [had] acted as an agent and employee of [respondent] and who [had] a felony police record." As part of its complaint, the Commission proposed the following penalties:

17. THEREFORE, under Section 313.805(6) R.S.Mo. it is proposed that an administrative penalty of $25,000 be imposed upon [Boyd] for the violation cited herein.

18. It is further proposed that [Boyd] shall not collect or distribute any funds pursuant to the Agreement or the oral agreement or allow the operation of the Machines within [Boyd's] riverboat gaming operation while the Machines are owned or controlled by [respondent].

19. It is further proposed that if, after December 1, 1995, [Boyd] is not in compliance with paragraph 18 its license shall be suspended.

On this same day, counsel for Boyd advised respondent by facsimile transmission to remove all its machines from Sam's Town by November 22, 1995.

On November 20, 1995, in response to Boyd's termination of the service agreement resulting from the filing of the complaint for disciplinary action, respondent filed a petition for declaratory judgment, injunctive relief and damages against the Commission and Boyd. Respondent's request for a temporary restraining order restraining Boyd from, *inter alia*, removing its machines from Sam's Town was denied on December 1, 1995. On December 9, 1995, respondent filed its first amended petition alleging six counts, Counts I–III against the Commission and the remaining counts against Boyd. In Count I, respondent requested a declaratory judgment declaring 11 C.S.R. 45–5.050(4) invalid and unenforceable. In Count II, respondent requested a declaratory judgment declaring that Boyd and other licensees were not prohibited by § 313.812 and 11 C.S.R. 45–

5.050(4) from transacting business with respondent. In Count III, respondent sought to restrain the Commission from enforcing 11 C.S.R. 45–5.050(4) against Boyd or other licensees transacting business with it. Counts IV–VI dealt with respondent's request for declaratory judgment, injunctive relief, and damages against Boyd.

On February 22, 1996, respondent filed a motion for summary judgment as to Count I only. On May 3, 1996, the Commission filed an answer to and motion to dismiss respondent's first amended petition. On June 5, 1996, the trial court entered summary judgment for respondent as to Count I, declaring that 11 C.S.R. 45–5.050(4)(E) was invalid and unenforceable because in promulgating the regulation the Commission exceeded its statutory authority. Further, although not part of the relief requested in Count I, the subject of respondent's motion for summary judgment, the trial court permanently restrained the Commission from enforcing the regulation. On June 14, 1996, the trial court denied the Commission's motion to dismiss. On July 9, 1996, on the Commission's motion, the trial court amended its order of summary judgment and order denying the Commission's motion to dismiss "to include the express determination under Rule 74.01(b) that there is no just reason for delay."

This appeal by the Commission follows.

## I.

### Standard of Review

The purpose of summary judgment under Missouri's fact-pleading regime is to identify cases (1) in which there is no genuine dispute as to the facts and (2) the facts as admitted show a legal right to judgment for the movant. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 380 (Mo. banc 1993). When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judg-

ment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellant court need not defer to the trial court's order granting summary judgment.

*Id.* at 376 (citations omitted).

As to the issue of the validity of 11 C.S.R. 45–5.050(4)(E), the parties are in agreement that it was subject to summary judgment. The dispute is over whether the trial court was correct in concluding from the record that it was invalid and unenforceable.

## Discussion

 In its first point, the Commission alleges that the trial court erred in granting respondent's motion for summary judgment declaring 11 C.S.R. 45–5.050(4)(E) invalid and unenforceable because the Commission did not exceed its statutory authority in its promulgation. We agree.

Rules and regulations are to be sustained unless unreasonable and plainly inconsistent with the act, and they are not to be overruled except for weighty reasons. The burden is upon those challenging the rules to show that they bear no reasonable relationship to the legislative objective. The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight. Administrative rules should be reviewed in light of the evil they seek to cure and are not unreasonable merely because they are burdensome.

*Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197–98 (Mo. banc 1972) (citations omitted). Thus, we will review the validity of 11 C.S.R. 45–5.050(4)(E) in light of the evil it seeks to cure.

As the Commission points out in its brief, gambling has historically been a crime in Missouri. Article III, § 39(9), Mo. Const., prohibits games of chance, while Chapter 572 defines and makes criminal illegal gambling activities. In its definition of illegal gambling, § 572.010(4) specifically excludes activities licensed by the Commission under §§ 313.800 to 313.840. Thus, what would otherwise be criminal activity is rendered lawful by the granting of a gaming license by the Commission. In easing the total criminal prohibition against gambling in this state and to insure that the remaining restraints on this otherwise criminal activity are not violated, the State is necessarily concerned that riverboat gaming operations within its borders be strictly monitored and regulated. Moreover, this concern is heightened in light of a legitimate concern that riverboat gaming licensed by the State will fall prey to corruption and will attract related criminal activity. This then is the evil the Commission seeks to cure by promulgating regulations such as 11 C.S.R. 45–5.050(4)(E).

11 C.S.R. 45–5.050(4)(E) reads as follows:

(4) The holder of a Class A license, Class B license, or both, may be disciplined for the following activities:

.　　　.　　　.　　　.　　　.

(E) Catering to, assisting, employing or associating with, either socially or in business affairs, persons of notorious or unsavory reputation or who have felony police records, or the employing either directly through a contract or other means, of any firm or individual in any capacity where the repute of the state of Missouri or the gaming industry is liable to be damaged because of the unsuitability of the firm or the individual.

Respondent contends that the trial court was correct in finding this regulation invalid and unenforceable because it "conflicts with, modifies and goes beyond the extent of §§ 313.812.8 and 313.812.14(5)" and "because the Gaming Commission did not have express or implied authority to promulgate such regulation." We disagree.

 Respondent is correct in its assertion that an administrative agency enjoys no

more authority than that which is granted to it by statute. *Termini v. Missouri Gaming Com'n,* 921 S.W.2d 159, 161 (Mo.App.1996). Regulations may be promulgated by an agency only to the extent and within the delegated authority granted to it by statute. *Hearst Corp. v. Director of Revenue,* 779 S.W.2d 557, 559–60 (Mo. banc 1989); *Termini,* 921 S.W.2d at 161. This delegated authority can either be expressly or impliedly conferred in the statute. *Brooks v. Pool–Leffler,* 636 S.W.2d 113, 119 (Mo.App.1982).

> Although the court's goal is to effectuate the statutory purpose intended by the legislature, it is for the legislature to establish the means to achieve the statutory purpose. An administrative agency cannot infer a power from the statute simply because that power would facilitate the accomplishment of an end deemed beneficial.

*Dishon v. Rice,* 871 S.W.2d 126, 128 (Mo. App.1994) (citations omitted). A power may be implied "only if it necessarily follows from the language of the statute." *Brooks,* 636 S.W.2d at 119. Regulations which exceed the authority granted the promulgating agency are null and void. *Termini,* 921 S.W.2d at 161; *Hearst,* 779 S.W.2d at 560.

> The primary rule of statutory construction is to ascertain the lawmaker's intent from the language used and, if possible, to give effect to that intent. *May Dept. Stores Co. v. Director of Revenue,* 791 S.W.2d 388, 389 (Mo. banc 1990). Words are to be considered in light of their plain and ordinary meaning. *Id.* Clear and unambiguous language leaves no room for construction. *Id.* The provision in question is viewed in the light of the entire regulation, to be harmonized, if possible, with that regulation.

*Americare Systems v. Missouri DSS,* 808 S.W.2d 417, 420 (Mo.App.1991). Using this as our standard, we read §§ 313.004, 313.800, 313.805, 313.812.8 and 313.812.14(5) as authorizing the promulgation of 11 C.S.R. 45–5.050(4)(E) by the Commission.

Section 313.004 creates the Missouri Gaming Commission and establishes its operations. Sections 313.800 to 313.850 govern "Excursion Gambling Boats," an excursion gambling boat being defined in § 313.800(7)

as "a boat, ferry or other floating facility licensed by the commission [defined in § 313.800(4) as the Missouri gaming commission] which gambling games are allowed." As so defined, the parties agree that Sam's Town Casino was granted Class A and Class B licenses by the Commission as an excursion gambling boat. Section 313.805 provides that the Commission shall "have full jurisdiction over and shall supervise all gambling operations governed by sections 313.800 to 313.850" and have the powers specifically enumerated therein and the power to **"promulgate rules and regulations to implement sections 313.800 to 313.850."** (Emphasis added). Among the Commission's enumerated powers found in § 313.805 is the power to take any action "as may be reasonable or appropriate to enforce section 313.800 to 313.850 and the commission rules." § 313.805(17). From these sections, we hold that the Commission has been granted statutory authority by the legislature to promulgate regulations to implement §§ 313.800 to 313.850. The only question is whether 11 C.S.R. 45–5.050(4)(E), as promulgated, is authorized by statute. We hold that it is pursuant to §§ 313.800 and 313.812.14. In this respect, we will discuss § 313.812.14 first.

Section 313.812.14 provides when a licensee may be disciplined, as follows:

> 14. A holder of any license shall be subject to imposition of penalties, suspension or revocation of such license, or other action for any act or failure to act by himself or his agents or employees, that is injurious to the public health, safety, morals, good order and general welfare of the people of the state of Missouri, **or that would discredit or tend to discredit the Missouri gaming industry or the state of Missouri** unless the licensee proves by clear and convincing evidence that it is not guilty of such action. The commission shall take appropriate action against any licensee who violates the law or the rules and regulations of the commission.

(Emphasis added). It also provides a list of specific acts for which a licensee can be disciplined, including § 313.812.14(5), which respondent contends is in conflict with 11

C.S.R. 45–5.050(4)(E). Section 313.812.14(5) provides as follows:

> 14. ... Without limiting other provisions of this subsection, the following acts or omissions may be grounds for such discipline:
>
> . . . . .
>
> (5) Associating with, either socially or in business affairs, or employing persons of notorious or unsavory reputation or who have extensive police records, or who have failed to cooperate with any officially constituted investigatory or administrative body and would adversely affect public confidence and trust in gaming;

. . . . .

As discussed, *supra*, § 313.805 expressly authorizes the Commission to promulgate regulations which bear a reasonable relationship to the legislative objectives of §§ 313.800 to 313.850. *Termini*, 921 S.W.2d at 161. We find that a fair reading of 11 C.S.R. 45–5.050(4)(E) and § 313.812.14(5) reveals that the regulation is in keeping with the legislative objective of the subsection.

In *Termini, supra*, this court addressed the issue of whether the Commission had exceeded its authority in promulgating 11 C.S.R. 45–15.030, which established criteria for excluding people from riverboat gaming operations who would adversely affect public confidence and trust in gaming resulting in their being placed on an "exclusion list." *Termini*, 921 S.W.2d at 162. In *Termini*, we recognized that an exclusion list, as such, was not expressly authorized by § 313.812.14(5). Nonetheless, we held that the regulation in question was not invalid as being beyond the statutory authority granted the Commission to promulgate regulations in that the regulation was reasonably related to the legislative objective of the subsection which was to regulate "the association of operators and their employees with persons who, because of articulated conduct, would adversely affect public confidence and trust in gaming." *Id.* at 162. In other words, we found the authority to promulgate the regulation was implied by § 313.812.14(5). No less can be said of the relationship existing between § 313.812.14(5) and 11 C.S.R. 45–5.050(4)(E).

Logically, if the Commission is authorized under § 313.812.14(5) to promulgate 11 C.S.R. 45–15.030, prohibiting convicted felons from patronizing riverboat gaming operations, it is authorized under the same subsection to promulgate 11 C.S.R. 45–5.050(4)(E), prohibiting licensees from employing or associating with, either socially or in business affairs, convicted felons. Thus, we hold that the Commission was authorized by § 313.812.14(5) to promulgate 11 C.S.R. 45–5.050(4)(E).

■ Respondent contends that, regardless of the Commission's authority to promulgate 11 C.S.R. 45–5.050(4)(E), it is still invalid because it conflicts with Section 313.812.14(5) in that the subsection prohibits licensees from employing or associating with persons with "extensive" police records, whereas the regulation prohibits employing or associating with persons with "felony" police records. We disagree.

Without further restriction, the "extensive police records" prohibition in the subsection would logically include convictions for misdemeanors, as well as felonies. Thus, in substituting "felony police records" in 11 C.S.R. 45–5.050(4)(E) for "extensive police records," the Commission curtailed the reach of the subsection by limiting the prohibition to felony conduct only. In this respect, respondent cannot be heard to complain that the regulation exceeds or is contrary to the authority granted by the subsection. The problem, as respondent contends, is that "extensive," as used in the subsection, connotes more than one conviction, whereas the regulation, as written, applies to only **one** felony conviction. In other words, respondent would apply the term "extensive" in a numerical sense only. We reject such a limitation of the term's meaning in the context of the subsection in which it appears.

"Extensive" is generally defined as "having great extent; covering a large area; vast;" "having a wide scope, effect, influence, etc.; far-reaching; comprehensive." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 481 (3RD ED.1997). Using this definition of extensive, we discern no numerical limitation, as respondent contends. Thus, we hold that the substitution by the Commission in 11 C.S.R.

45–5.050(4)(E) of "felony police records" for "extensive police records" neither rendered it in excess of the authority granted by nor in conflict with § 313.812.14(5). This is consistent with our holding in *Termini*, where we held that the promulgation of 11 C.S.R. 45–15.030, which prohibits a person with **one** felony conviction from patronizing riverboat gaming operations, was authorized by § 313.812.14(5) and was not invalid. This is also consistent with § 313.812.8, which we discuss, *infra*, which prohibits employment or association by a licensee with a person convicted of **one** felony.

Finally, as to § 313.812.14(5), respondent contends that the regulation is in conflict with the subsection because it does not include the requirement found in the following phrase from the subsection: "[the conduct] would adversely affect public confidence and trust in gaming." This argument is nitpicking at best and is without merit. Unlike the language used in the subsection, the regulation language prohibits conduct "where the repute of the state of Missouri or the gaming industry is liable to be damaged." Although not using the exact language of the subsection, and there is no authority for requiring the Commission to do so, we find the language of the regulation imposes the same requirement as the language quoted from the subsection, thus meeting the legislative objective of § 313.812.14(5). In fact, not using the exact language of the subsection in the regulation was logical and reasonable in that in doing so, the Commission was able to pull together both the quoted language from § 313.812.14(5) as well as the language in § 313.812.14, which speaks of conduct "that would discredit or tend to discredit the Missouri gaming industry or the state of Missouri."

Because we find authority from § 313.812.14 for the promulgation of the regulation, it is unnecessary for us to determine whether § 313.812.8 also authorizes its promulgation. Nonetheless, it is clear that it does, unless respondent is correct in its contention that the regulation is invalid because it conflicts with § 313.812.8.

Section 313.812.8 provides:

8. A license shall not be granted if the applicant has not established his good repute and moral character or if the applicant has pled guilty to, or has been convicted of, a felony. No licensee shall employ or contract with any person who has pled guilty to, or has been convicted of, a felony to perform any duties directly connected with the licensee's privileges under a license granted pursuant to this section, except that employees performing non-gaming related occupations as determined by the commission shall be exempt from the requirements of this subsection.

A fair reading of this section reveals that it expressly prohibits a licensee from employing or contracting with a person convicted of a felony. In this respect, this section and the implementing regulation, 11 C.S.R. 45–5.050(4)(E), are not in conflict. However, respondent contends that the exception of this subsection and the regulation are in conflict. The exception to which respondent refers comes from the subsection language that "employees performing non-gaming related occupations as determined by the commission shall be exempt from the requirements of the subsection." In contending that there is a conflict between the subsection and the regulation, the respondent argues that the subsection expressly allows what the regulation prohibits in that the subsection only prohibits licensees from contracting with and employing felons performing "duties directly connected with the licensee's privileges" and provides an express exemption for employee felons engaged in nongaming related occupations, and the regulation does not.

Even assuming, *arguendo*, that the respondent is correct in asserting that "employees," as used in the exemption of the subsection, refers to employees of parties contracting with licensees, not just employees of licensees, its argument is without merit in that it ignores plain language of the subsection, that language being **"as determined by the commission."** Giving this language its plain meaning, we read it as leaving it to the discretion of the Commission to determine what nongaming occupations are to be exempted from the prohibition as to employee felons. The fact the Commission chose by regulation not to exempt any such

occupations is not contrary to the language of the subsection. Contrary to respondent's argument, the subsection in question does not mandate that exemptions be given to employees in nongaming occupations, but simply grants the authority to the Commission to allow such exemptions in its discretion. We find from the language of § 313.812.8 a legislative objective to vest the Commission with discretion to prohibit licensees from contracting with and employing convicted felons even in nongaming occupations. This too is consistent with our holding in *Termini.* If the Commission has the power to exclude felons as patrons from riverboat gaming operations out of concern for how it will adversely reflect on the image of the state and its gaming industry, as we held in *Termini*, logically, this same concern would apply to convicted felons in nongaming occupations.

Respondent further contends that the regulation is in conflict with § 313.812.8 because the subsection, by its terms, only applies to contractual and employment relationships, while the regulation speaks in terms of "[c]atering to, assisting, employing or associating with, either socially or in business affairs." We find this contention to be without merit in that the terms "catering" and "assisting" would logically be akin to "associating," as used in both the subsection and regulation. Thus, in this respect, the regulation in no way expands or is in conflict with the legislative objective of § 313.812.8.

In summary, as we discussed, *supra,* the state has a legitimate concern in strictly regulating and monitoring riverboat gaming operations. As such, any doubt as to the legislative objective or intent as to the Commission's power to regulate riverboat gaming operations in this state must be resolved in favor of strict regulation. Thus, viewing 11 C.S.R. 45–5.050(4)(E) in light of the evil it was designed to cure, we hold that its promulgation by the Commission was statutorily authorized by §§ 313.004, 313.800, 313.805, 313.812.8 and 313.812.14(5), and that it neither exceeds nor conflicts with the authority granted.

Point denied.

## II.

In its second point, the Commission claims that the trial court erred in "entertaining" Counts II and III of respondent's first amended petition in that the trial court lacked jurisdiction to hear them because § 313.840.2, as to the review of the Commission's decisions, grants exclusive jurisdiction to the Missouri Court of Appeals, Western District, and because respondent had not exhausted its administrative remedies. In this respect, the Commission filed a motion to dismiss respondent's first amended petition for a lack of jurisdiction, which was denied by the trial court and certified for appeal pursuant to Rule 74.01(b). Regardless of how this point on appeal is termed, it is apparent that what the Commission is appealing is the trial court's denial of its motion to dismiss for a lack of jurisdiction. Thus, we will review the Commission's Point II in this context. Initially, we will address respondent's contention that we lack appellate jurisdiction as to the Commission's appeal on this point.

An appeal can only be taken from a final judgment. *Concepts Com. Mgt. v. Newhard Cook & Co.,* 829 S.W.2d 554, 555 (Mo.App.1992). If the judgment is not final, the appellate court lacks jurisdiction to hear the appeal, and it must be dismissed. *Century Financial Services Group v. Roche,* 896 S.W.2d 743, 744 (Mo.App.1995). Even if the parties fail to raise the issue of appellate jurisdiction, the appellate court is obligated to raise it *sua sponte. Century,* 896 S.W.2d at 744; *Concepts,* 829 S.W.2d at 555.

The trial court here, pursuant to Rule 74.01(b), "certified" its order denying the Commission's motion to dismiss for a lack of jurisdiction as a final judgment for appeal purposes by expressly determining that there was "no just reason for delay." Rule 74.01(b) provides in pertinent part:

**(b) Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties

only upon an express determination that there is no just reason for delay.

Notwithstanding the trial court's certification, the denial of a motion to dismiss for a lack of jurisdiction is not a final judgment which can be appealed. *Boillot v. Conyer,* 861 S.W.2d 152, 154 (Mo.App.1993). An order denying a motion to dismiss for lack of jurisdiction is not an ultimate disposition of an individual claim rendering it a final judgment. *Boillot,* 861 S.W.2d at 154; *Concepts,* 829 S.W.2d at 555. Such an order is merely a determination of the trial court's jurisdiction to adjudicate the claim sought to be dismissed and is properly reviewable by an extraordinary writ. *Boillot,* 861 S.W.2d at 154. Although Rule 74.01(b) allows in cases of multiple claims or parties an "early" appeal as to what would otherwise be a final judgment if not for separate claims still pending, the rule is not a "procedural magic wand" that can be waived to create a final judgment where none legally can exist. *Concepts,* 829 S.W.2d at 555.

Here, the confusion results from the fact that the respondent had only one claim as to the Commission, which was pled in the alternative. Respondent's claim is that it should not be prohibited from transacting business with Boyd or any other Class A and B licensees under 11 C.S.R. 45–5.050(4)(E). As relief on this claim, respondent first requested in Count I that the regulation in question be declared invalid and unenforceable. In the alternative in Count II, respondent requested that the regulation be declared inapplicable to it. And finally, in Count III, respondent requested injunctive relief if the trial court found in its favor as to Count I and/or Count II. Thus, when the trial court granted summary judgment on Count I and gratuitously entered injunctive relief as requested in Count III, respondent's claim was resolved; and pursuant to Rule 74.01(b), there was a final judgment from which an appeal could properly be taken. On the other hand, the denial of the Commission's motion to dismiss as to Counts II and III did not dispose of respondent's claim. And, as stated, *supra,* this denial merely determined the trial court's jurisdiction to hear respondent's claim under these counts. The merits of Counts II and III were not reached as a result of the trial court's ruling on respondent's motion for summary judgment as to Count I. Thus, the trial court's order denying the Commission's motion to dismiss did not dispose of a single claim as to one party and was not and is not a final appealable order, notwithstanding its Rule 74.01(b) certification by the trial court. Thus, we are compelled to dismiss the Commission's appeal as to Counts II and III of respondent's first amended petition.

### Conclusion

The trial court's summary judgment for respondent on Count I of its first amended petition declaring 11 C.S.R. 45–5.050(4)(E) invalid and unenforceable is reversed, and the cause is remanded for further proceedings consistent with this opinion. The Commission's appeal as to Counts II and III of respondent's first amended petition is dismissed.

All concur.