**DIRECTOR, MISSOURI DEPARTMENT OF PUBLIC SAFETY, Respondent,**

v.

**Steve MURR, Appellant.**

**No. WD 57106.**

Missouri Court of Appeals, Western District.

Feb. 8, 2000.

Virginia L. Fry, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

Before: SMART, P.J., and ELLIS and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

This is an appeal from the judgment[1] of the circuit court reversing the decision of the Administrative Hearing Commission (the AHC) ordering the Missouri Department of Public Safety (the DPS) to certify Steve Murr (Murr) as a peace officer pursuant to § 590.120.5.[2]

In the DPS's sole point on appeal, it claims that the AHC erred in ordering it to certify Murr as a peace officer, even though he did not have a high school diploma or its equivalent, as required by 11 C.S.R. 75–3.020(3), because: (1) contrary to the finding of the AHC, it did have the authority, under § 590.120.5, to promulgate 11 C.S.R. 75–3.020(3); and (2) in the alternative, even if it did not have such authority, laches prohibited Murr from challenging its decision to deny him certification as a peace officer.

We affirm.

### Facts

On January 1, 1993, Sheriff Garrell Mitchell hired Murr as a deputy sheriff for the Wright County Sheriff's Department.

---

**1.** Although this is an appeal from the judgment of the circuit court, which, in reversing the decision of the Administrative Hearing Commission, found for the Missouri Department of Public Safety, because we review the decision of the Administrative Hearing Commission, which found for Murr, the Department of Public Safety is required to file the appellant's brief. Rule 84.05(e), Missouri Rules of Civil Procedure (1999).

**2.** All statutory references to § 590.120 are to RSMo Supp.1993. All other statutory references are to RSMo 1994, unless otherwise indicated.

At that time, he had only attended school through the eighth grade and had not received a General Educational Development (GED) certificate. On February 21, 1993, Murr completed an application for peace officer certification, as required by § 590.110.1, RSMo Supp.1988. For some unexplained reason, Sheriff Mitchell did not send the application to the DPS until May 1993. Sometime in June 1993, Murr learned that the DPS required him to have a high school diploma or its equivalent before it would certify him as a peace officer. On June 25, 1993, he successfully completed 120 hours of basic law enforcement training at the University of Missouri in Columbia, Missouri, as required by § 590.105.1, RSMo Supp.1990.

On September 15, 1993, Grace Kallenbach, the program monitor for the Peace Officer Standards and Training Commission (the POST) sent a letter to Sheriff Mitchell requesting a copy of Murr's high school diploma or its equivalent, stating that a copy was needed before "we can further process the officer's POST Certification Application." Because Murr did not have a high school diploma or its equivalent, in August or September 1993, he took the GED examination, but failed.

On November 4, 1994, Chris Egbert, the POST director, sent a letter to Sheriff Mitchell informing him that Murr had not completed the "minimum basic training course within the twelve (12) months specified by law." He suggested that, in order to protect the Wright County Sheriff's Department from civil liability, Sheriff Mitchell place Murr in a non-commissioned position. He also informed Sheriff Mitchell that he could request a hearing, within thirty days of receipt of his letter, to present evidence as to why Murr should not be denied certification as a peace officer.

In February 1997, the local prosecutor filed a criminal charge against Sheriff Mitchell for employing a non-certified peace officer. § 590.180.1. As a result, on February 23, 1997, Sheriff Mitchell terminated Murr's employment as a deputy sheriff for lack of certification. Sometime after his termination, Murr enrolled in a correspondence course offered by the International Correspondence Schools Newport/Pacific High School (ICS) designed to allow people to obtain a high school diploma by self-directed study. On October 6, 1997, Murr was awarded a diploma from ICS for successful completion of its program.

On October 14, 1997, Sheriff Mitchell contacted Mr. Egbert and informed him that Murr had received his high school diploma and requested that he be certified as a peace officer. Mr. Egbert informed Sheriff Mitchell that Murr's ICS diploma was not recognized in Missouri as being equivalent to a high school diploma. On January 13, 1998, Murr requested a hearing before the AHC concerning the DPS's refusal to certify him as a peace officer. A hearing was held on May 28, 1998.[3] At the hearing, the DPS contended that it had the authority to promulgate 11 C.S.R. 75–3.020(3), requiring applicants for peace officer certification to have a high school diploma or its equivalent, and Murr's ICS diploma was not equivalent to a high school diploma. The DPS also took the position that Murr was forever barred under the law from being certified because he did not obtain his certification within twelve months of first being employed as a peace officer.

On August 14, 1998, the AHC found that the DPS did not have the statutory authority to promulgate 11 C.S.R. 75–3.020(3), requiring that applicants for peace officer certification have a high school diploma or its equivalent. As such, it found that, while Murr's ICS diploma was not recognized as the equivalent to a high school diploma in Missouri, because the DPS could not require that he have a high

3. Although the record does not reflect whether the AHC took the issue of the DPS's refusal to certify the respondent as a peace officer under advisement at the conclusion of the hearing, we assume that it did so.

school diploma or its equivalent, his failure to have such was not a valid bar to certifying him as a peace officer. Hence, the AHC ordered the DPS to certify him as a peace officer. The DPS appealed the AHC's decision to the Circuit Court of Cole County.

On February 18, 1999, the trial court reversed the AHC's decision, finding that it was not supported by substantial and competent evidence because the DPS did, in fact, have the statutory authority, pursuant to § 590.120.5, to enact 11 C.S.R. 75–3.020(3) requiring that applicants for peace officer certification have a high school diploma or its equivalent.[4]

This appeal follows.

## Standard of Review

■ Our review is of the decision of the AHC, not the decision of the trial court. *Psychiatric Healthcare Corp. v. Department of Soc. Servs., Div. of Med. Servs.*, 996 S.W.2d 733, 735 (Mo.App.1999) (*citing Black v. Lombardi*, 970 S.W.2d 378, 381 (Mo.App.1998)). We are to uphold the decision of the AHC when it is "authorized by law and supported by competent and substantial evidence upon the whole record." § 621.193. "Our review is limited to determining whether the 'decision is in excess of jurisdiction, unsupported by competent and substantial evidence, or is arbitrary, capricious, or unreasonable.'" *Cohen v. Missouri Bd. of Pharmacy*, 967 S.W.2d 243, 246 (Mo.App.1998) (*quoting Burgdorf v. Board of Police Comm'rs*, 936 S.W.2d 227, 230 (Mo.App.1996)).

## I.

In the DPS's sole point on appeal, it claims that the AHC erred in ordering it to certify Murr as a peace officer, even though he did not have a high school diploma or its equivalent, as required by 11 C.S.R. 75–3.020(3), on two bases. First, it claims that, contrary to the finding of the AHC, it did have the authority under § 590.120.5 to promulgate 11 C.S.R. 75–3.020(3). Second, it claims, in the alternative, that even if it did not have such authority, laches prohibited Murr from challenging its decision to deny him certification as a peace officer. We believe that the first basis is dispositive of the appeal.

## A. Statutory Authority to Promulgate 11 C.S.R. 75–3.020(3)

Given the far-reaching and serious implications of police action for our citizenry, it goes without saying that the state has a vested interest in insuring that law enforcement personnel, whether state, county, or municipal, have a minimal level of competence with respect to their education and training in order to carry out their required duties within the parameters of our federal and state constitutions and laws. In keeping with this general proposition, § 590.110.1, RSMo Supp.1988, in effect at the time Murr was first appointed as a deputy sheriff for Wright County, provided:

1. No person shall be appointed as a peace officer by any public law enforcement agency, which is possessed of the duty and power to enforce the general criminal laws of the state or the ordinances of any political subdivision of this state, unless he has been certified by the director as provided in sections 590.100 to 590.180, unless he is appointed on a probationary basis, and the hiring agency, within one year after his initial appointment, takes all necessary steps to qualify him for certification by the director. Unless a peace officer is certified within the one-year period after appointment, his appointment shall be terminated and he shall not be eligible for appointment by any other law enforcement agency as a peace officer.

A "peace officer" for purposes of certification is defined as "members of the state highway patrol, all state, county, and municipal law enforcement officers possessing

4. The record does not reflect whether a hearing was ever held before the trial court.

the duty and power of arrest for violation of any criminal laws of the state or for violation of ordinances of counties or municipalities of the state who serve full time, with pay." § 590.100(4). Thus, by law, Murr, at the time of his appointment as a deputy sheriff for Wright County, was required to be certified as a peace officer within one year, as provided in §§ 590.100 to 590.180, or be terminated. § 590.110.1, RSMo Supp.1988; *Medley v. Director of Revenue,* 950 S.W.2d 879, 881 (Mo.App. 1997).

At the time of Murr's initial application for certification in May of 1993, in order to be certified as a peace officer, he was required by statute to complete a minimum number of hours of approved law enforcement training. § 590.105.1, RSMo Supp.1990. In this respect, there is no dispute on appeal that he was required to have and had completed one hundred twenty hours of training.[5] § 590.105.1, RSMo Supp.1990.

In addition to the express statutory requirements for peace officer certification, the General Assembly created, within the DPS, the POST Commission, § 590.120.1, and authorized it to "establish the core curriculum and . . . also formulate definitions, rules and regulations for the administration of peace officer standards and training." § 590.120.5. The dispute in this case centers on the interpretation to be given this language. The AHC found, and Murr agrees, that the statute did not authorize the POST Commission of the DPS to promulgate 11 C.S.R. 75–3.020(3), requiring applicants for certification to have a high school diploma or its equivalent. The DPS disagrees.

■ "[A]n administrative agency enjoys no more authority than that which is granted to it by statute." *Pen–Yan Inv., Inc. v. Boyd Kansas City, Inc.,* 952 S.W.2d 299, 303–04 (Mo.App.1997) (*citing Termini v. Missouri Gaming Comm'n,* 921 S.W.2d 159, 161 (Mo.App.1996)). "Only rules promulgated by an administrative agency with properly delegated authority have the force and effect of law." *Psychcare Management, Inc. v. Department of Soc. Servs., Div. of Med. Servs.,* 980 S.W.2d 311, 313–14 (Mo. *banc* 1998). "This delegated authority can either be expressly or impliedly conferred in the statute." *Pen–Yan Inv., Inc.,* 952 S.W.2d at 304. "A power may be implied 'only if it necessarily follows from the language of the statute.'" *Id.* (*quoting Brooks v. Pool–Leffler,* 636 S.W.2d 113, 119 (Mo.App.1982)). Thus, in deciding the issue presented, we are necessarily required to interpret § 590.120.5 to determine if it conferred, either expressly or impliedly, the POST Commission of the DPS with the authority to promulgate the controlling regulation in question.

■ In interpreting statutes, our purpose is to ascertain the intent of the legislature. *American Healthcare Management, Inc. v. Director of Revenue,* 984 S.W.2d 496, 498 (Mo. *banc* 1999) (*citing Hyde Park Hous. Partnership v. Director of Revenue,* 850 S.W.2d 82, 84 (Mo. *banc* 1993)). In doing so, we look to the language used, giving it its plain and ordinary meaning. *Id.* The courts are without authority to read into a statute a legislative intent that is contrary to the intent made evident by giving the language employed in the statute its plain and ordinary mean-

---

**5.** In 1993, § 590.105, RSMo Supp.1990, was amended to require peace officer applicants have minimum training of one hundred twenty hours as of August 28, 1993; three hundred hours as of August 28, 1994; and four hundred fifty hours as of August 28, 1996. § 590.105.1, RSMo Supp.1993. This requirement was subject, however, to the exception of § 590.105.4, RSMo Supp.1993, providing that a peace officer in a third-class county was not required to have more than "one hundred twenty hours of training for certification if the respective city or county adopts an order or ordinance to that effect." In addition to these minimum training requirements, § 590.110, RSMo Supp.1988, was amended in 1993 to require a criminal background check by the Missouri State Highway Patrol. § 590.110.2, RSMo Supp.1993.

ing. *Emery v. Wal–Mart Stores, Inc.*, 976 S.W.2d 439, 449 (Mo. *banc* 1998); *Kearney Special Rd. Dist. v. County of Clay*, 863 S.W.2d 841, 842 (Mo. *banc* 1993). When the legislative intent cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied. *Bosworth v. Sewell*, 918 S.W.2d 773, 777 (Mo. *banc* 1996).

■ Giving the language of § 590.120.5 its plain and ordinary meaning, we find that the intent of the legislature was to give the POST Commission the authority to promulgate rules and regulations not only establishing the core curriculum and training requirements for peace officer certification, but also standards, which would logically include minimum educational standards, that must be met before a person is eligible for such certification. As such, this authority impliedly conferred it with the power to promulgate 11 C.S.R. 75–3.020(3) requiring peace officer applicants to have a high school diploma or its equivalent before they are eligible for certification. This determination, however, does not end our inquiry in that we must also determine whether 11 C.S.R. 75–3.020(3) is reasonable and consistent with the legislative objective in requiring such certification. This is so in that

> [r]ules and regulations are to be sustained unless unreasonable and plainly inconsistent with the act, and they are not to be overruled except for weighty reasons. The burden is upon those challenging the rules to show that they bear no reasonable relationship to the legislative objective. The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight. Administrative rules should be reviewed in light of the evil they seek to cure and are not unreasonable merely because they are burdensome.

*Pen–Yan Inv., Inc.*, 952 S.W.2d at 303 (*quoting Foremost–McKesson, Inc. v.*

*Davis*, 488 S.W.2d 193, 197–98 (Mo. *banc* 1972) (citations omitted)).

■ As stated, *supra*, given the far-reaching and serious implications of police action for our citizenry, the state has a vested interest in insuring that law enforcement personnel have a minimal level of competence with respect to their education and training in order to carry out their required duties within the parameters of our federal and state constitutions and laws. The regulations promulgated by the POST Commission reflect this fact, stating that certification is "[t]o improve services provided by ... peace officers," "raise their level of competency," 11 C.S.R. 75–1.010(1), and "foster cooperation among agencies, groups, organizations, jurisdictions and individuals." 11 C.S.R. 75–3.010.1. In our view, 11 C.S.R. 75–3.020(3), requiring that applicants for peace officer certification must have a high school diploma or its equivalent, is reasonable and consistent with the legislature's purpose in requiring such certification.

Because the POST Commission had the statutory authority to promulgate 11 C.S.R. 75–3.020(3), which was contrary to the AHC's finding, and because there is no dispute that Murr does not have, and did not have at the time he first applied for certification, a high school diploma or its equivalent, we find the decision of the AHC, ordering the DPS to certify Murr as a peace officer, erroneously declared and applied the law and was not supported by competent and substantial evidence upon the whole record.

### B. Laches

■ With respect to its laches argument, the DPS contends that § 590.110.1, RSMo Supp.1988, should be interpreted as forever barring Murr from seeking certification as a peace officer because he did not obtain certification within one year of his first being appointed as a deputy sheriff of Wright County. Although this issue is now moot given our discussion, *supra*, be-

cause it presents an unsettled legal issue of public interest and importance that is likely to be raised in the future, we will address it. *In Interest of R.M.M.*, 902 S.W.2d 355, 358 (Mo.App.1995).

 Section 590.110.1, RSMo Supp. 1988, reads, in pertinent part: "[u]nless a peace officer is certified within the one-year period after appointment, his appointment shall be terminated and he shall not be eligible for appointment by any other law enforcement agency as a peace officer." The DPS contends that this language of the statute should be interpreted as forever barring an individual from being certified as a peace officer if he or she was not certified within one year of being hired initially as a peace officer. According to Murr, however, this language should be interpreted as providing that once a person is terminated for failing to obtain peace officer certification within one year of his or her initial appointment, he or she cannot be rehired as a peace officer without first receiving such certification. We agree.

As discussed, *supra*, in interpreting statutes, we look to the language used, giving it its plain and ordinary meaning, in order to determine the intent of the legislature. *American Healthcare Management, Inc.*, 984 S.W.2d at 498. Giving the language of § 590.110.1, RSMo Supp.1988, in question its plain and ordinary meaning, we find that the legislature did not intend that a person who is not certified as a peace officer within one year of his or her initial appointment is forever barred thereafter from being certified. Rather, the statute simply says that if a peace officer is not certified within one year of his or her initial appointment, the appointment must be terminated and he or she cannot, thereafter, be rehired as a peace officer by any other law enforcement agency in this state, unless he or she has first obtained certification. The statute was obviously designed to prevent a non-certified peace officer from being terminated at the end of his or her one-year probationary period

and then being rehired, giving him or her not only another one-year probationary period in which to receive certification, but also another year in which to work as a non-certified peace officer. Without such a provision, one so inclined could totally circumvent the certification requirement of § 590.110.1, RSMo Supp.1988, by simply being terminated and then being rehired shortly thereafter. It is our interpretation that § 590.110.1, RSMo Supp.1988, would not prevent a person in this state, such as Murr, who was hired and terminated after failing to become certified within the one-year probationary period, from being certified in the future and, upon such certification, being reappointed as a peace officer by a public law enforcement agency.

Point denied.

### Conclusion

For the reasons stated, the judgment of the circuit court reversing the decision of the AHC is affirmed.

SMART, P.J., and ELLIS, J., concur.