**NATIONAL WILDLIFE FEDERATION, et al., Appellees,**

v.

**Manuel LUJAN, Jr., Secretary, Department of the Interior, et al., Appellants.**

**Nos. 90–5352, 90–5354, 90–5356 and 90–5358.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 23, 1991.

Decided Dec. 10, 1991.

As Amended Dec. 10, 1991.

---

Dirk D. Snel, Atty., Dept. of Justice, with whom Richard B. Stewart, Asst. Atty. Gen., Alfred T. Ghiorzi, Edward J. Shawaker, and Jacques B. Gelin, Attys., Dept. of Justice, Washington, D.C., were on the brief, for appellants Secretary of the Interior, et al., in 90–5352, 90–5356 and 90–5358.

J. Michael Klise, with whom John A. Macleod, Thomas C. Means and Harold P. Quinn, Jr., Washington, D.C., for Nat. Coal Ass'n, and Edward M. Green and Stuart A. Sanderson, Washington, D.C., for American Min. Congress, were on the brief, for appellants Nat. Coal Ass'n and American Min. Congress in 90–5354.

L. Thomas Galloway, with whom Glenn P. Sugameli and Thomas J. FitzGerald, Washington, D.C., were on the brief, for appellees in 90–5352, 90–5354, 90–5356 and 90–5358.

Lawrence G. McBride, Washington, D.C., was on the brief, for amicus curiae Interstate Min. Compact Com'n urging that the District Court's order be reversed and the Secretary's rule be reinstated.

Before WALD, D.H. GINSBURG and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Surface coal mining is a temporary use of the land. When mining ends the land must be restored. After revegetation is complete, and sufficient time has passed to ensure its success—5 years in the east, 10 years in the arid west—a mine operator who has fulfilled all legal requirements is entitled to have his performance bond released. The principal question in this case is whether under the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201–1328 (1988), regulatory jurisdiction may then be terminated. The Secretary of the Interior issued regulations so providing. *See* 52 Fed.Reg. 24,092 (1987) (Notice

of Proposed Rulemaking); 53 Fed.Reg. 44,-356 (1988) (Final Rule). The district court, at the behest of the National Wildlife Federation and others ("NWF"), struck them down. *National Wildlife Fed'n v. Interior Dep't*, 31 Env't Rep.Cas. (BNA) 2034, 2040–41, 1990 WL 134495 (D.D.C.1990). Because we find the Act silent on the issue presented and the Secretary's interpretation permissible, we reverse.[1]

As night follows day, litigation follows rulemaking under this statute. Since the Act's passage in 1977, in cases challenging regulations, our opinions have described in considerable detail the Act's structure and operation.[2] We shall assume familiarity with those opinions. In brief, the Act is intended to protect the environment from the adverse effects of surface coal mining while ensuring an adequate supply of coal to meet the nation's energy requirements. 30 U.S.C. § 1202(a), (f). Section 501(b) directs the Secretary to promulgate regulations establishing regulatory procedures and performance standards "conforming to the provisions of" the Act (30 U.S.C. § 1251(b)). Section 515 contains detailed "environmental protection performance standards" applicable to "all surface coal mining and reclamation operations." 30 U.S.C. § 1265. Through the Office of Surface Mining Reclamation and Enforcement ("OSMRE"), the Secretary is to take steps "necessary to insure compliance with" the Act. 30 U.S.C. § 1211(a), (c)(1). The states too have a significant role to play. After an interim period of federal regulation, states had the option of proposing plans for implementing the Act consistent with federal standards on non-federal lands. When the Secretary approved the programs submitted by the states, those states became primarily responsible for regulating surface coal mining and reclamation in the non-federal areas within their borders. 30 U.S.C. § 1253. In states not having an approved program, the Secretary implemented a federal program. 30 U.S.C. § 1254(a), (b). The "permanent program" regulations issued under section 501(b) set standards for federally-approved state programs and for the federal program that takes effect when a State fails to "implement, enforce, or maintain" its program. 30 U.S.C. § 1254(a). Enforcement is carried out by the "regulatory authority," that is, the state agency administering the federally-approved program, the Secretary administering a federal program, or OSMRE conducting oversight of state programs. *See* 30 C.F.R. § 700.5.

The primary means of ensuring compliance is the permit system established in sections 506 through 514 and section 515(a). 30 U.S.C. §§ 1256–1264, 1265(a). A permit is required for "any surface coal mining operations."[3] 30 U.S.C. § 1256. Summaries of applications for permits must be published, and objections may be submitted by local agencies or by "any person having an interest which ... may be adversely affected" by a proposed operation. 30 U.S.C. § 1263. Each application must include a reclamation plan. Section 507(d), 30 U.S.C. § 1257(d). A reclamation plan describes the present use of the land, proposed and possible post-mining uses of the land, and what steps the operator will take to ensure the viability of the latter. Among other things, the plan must show how the operator will achieve soil reconstruction and revegetation of the mined area. Section 508, 30 U.S.C. § 1258.[4] A

---

1. The Secretary also asks us to vacate the portion of the district court's opinion requiring him to withdraw or revise 30 C.F.R. § 840.11(g)-(h) and 30 C.F.R. § 842.11(e)-(f). Those regulations, which the Secretary here concedes were invalid as promulgated, Brief for the Secretary at 32, governed inspection of abandoned sites. The Secretary believes the district court's opinion would prevent any further rulemaking on the subject of abandoned site inspections.

2. *National Wildlife Fed'n v. Lujan*, 928 F.2d 453 (D.C.Cir.1991); *National Wildlife Fed'n v. Hodel*, 839 F.2d 694 (D.C.Cir.1988); *In re Permanent Surface Mining Regulation Litig.*, 653 F.2d 514 (D.C.Cir.), *cert. denied*, 454 U.S. 822, 102 S.Ct. 106, 70 L.Ed.2d 93 (1981); *In re Surface Mining Regulation Litig.*, 627 F.2d 1346 (D.C.Cir.1980).

3. Apart from the minor exceptions set forth in section 528, 30 U.S.C. § 1278.

4. The revegetation standards require that an operator establish "a diverse, effective and permanent vegetative cover" over the area after mining has ceased. 30 U.S.C. § 1265(b)(19). By the terms of the Act, the operator "assume[s] the

permit application can only be approved if it demonstrates that "all requirements" of the Act have been satisfied and that "reclamation as required by [the Act] . . . can be accomplished." 30 U.S.C. § 1260.

Section 509 requires the operator to post a performance bond in an amount sufficient to secure completion of reclamation. The operator and the surety remain liable under the bond for the duration of the surface mining and reclamation operation and until the end of the "revegetation period" (5 or 10 years) prescribed by section 515(b)(20). 30 U.S.C. § 1259(b). At that time, the operator may petition the regulatory authority for release of the bond. The petition must be published, and is subject to the same opportunities for comment and hearing as the permit application. 30 C.F.R. § 800.40(a)(2), (b)(2). Further, "[n]o bond shall be fully released . . . until reclamation requirements of the Act and the permit are fully met." *Id.* § 800.40(c)(3).

Prior to this rulemaking, the relationship between bond release and continuing regulatory jurisdiction was unclear. 53 Fed. Reg. 44,356 (1988). State authorities would decline to act on violations reported after bond release, even when the allegation was that the bond had been released improperly. In some such cases, OSMRE would reassert jurisdiction directly. *Id.* This led to confusion about whether a site was or was not subject to the Act. In order to end this confusion, the Secretary promulgated the rules at issue, which specify when regulatory jurisdiction over a site terminates. *Id.* Thus, 30 C.F.R. § 700.11(d)(1) provides that

"a regulatory authority may terminate its jurisdiction . . . over [a] reclaimed site" when (and only when) the authority determines (either independently or pursuant to a bond release) that "all requirements imposed" have been completed.[5] *Id.* By tying termination of jurisdiction to bond release, the Secretary sought to resolve doubts about the former, while imposing minimum standards for the latter on the state authorities.

In the district court NWF claimed that it was "premature" to terminate regulatory jurisdiction at the time of bond release. Complaint of National Wildlife Federation at 14, Civ. No. 88–3345 (D.D.C. filed Nov. 17, 1988). The district court interpreted NWF's complaint not simply as an objection to timing, but as an attack on "the concept of terminating jurisdiction." *National Wildlife Fed'n v. Interior Dep't,* 31 Env't Rep.Cas. (BNA) at 2039. Seizing on language found in section 521 of the Act, 30 U.S.C. § 1271, the court noted that the Secretary was under "an ongoing duty . . . to correct violations . . . without limitation." 31 Env't Rep.Cas. (BNA) at 2040. The court also believed that allowing termination of jurisdiction would "hinder" the Act's goal of "protect[ing] the environment." *Id.* at 2041. In view of these considerations, the court believed it proper to interpret Congress' silence on the precise question of termination of jurisdiction as a call for perpetual regulation. *Id.*

■ The district court's opinion and NWF's claim of prematurity suffer from

responsibility" for success of the revegetation program for 5 years (10 years in the arid Western states) after the revegetation standard is first met. 30 U.S.C. § 1265(b)(20).

5. The full text of 30 C.F.R. § 700.11(d) reads:
   (1) A regulatory authority may terminate its jurisdiction under the regulatory program over the reclaimed site of a completed surface coal mining and reclamation operation, or increment thereof, when:
   (i) The regulatory authority determines in writing that under the initial program, all requirements imposed under subchapter B of this chapter have been successfully completed; or
   (ii) The regulatory authority determines in writing that under the permanent program,

all requirements imposed under the applicable regulatory program have been successfully completed or, where a performance bond was required, the regulatory authority has made a final decision in accordance with the State or Federal program counterpart to part 800 of this chapter to release the performance bond fully.
   (2) Following a termination under paragraph (d)(1) of this section, the regulatory authority shall reassert jurisdiction under the regulatory program over a site if it is demonstrated that the bond release or written determination referred to in paragraph (d)(1) of this section was based upon fraud, collusion, or misrepresentation of a material fact.

the same flaw. Section 521 cannot be read to express or assume that regulatory jurisdiction over a surface coal mining and reclamation operation must continue forever. It is true that section 521 requires the regulatory authority to "take ... action" "*whenever*" a violation occurs, 30 U.S.C. § 1271(a)(1) (emphasis added). But by "action," section 521 means primarily the issuance of an order requiring "cessation of surface coal mining and reclamation operations." 30 U.S.C. § 1271(a)(2). Section 521(a)(2) also empowers the Secretary to impose other "affirmative obligations" on the operator; these, however, are to be exacted "in addition to the cessation order," 30 U.S.C. § 1271(a)(2). It thus appears that Congress contemplated enforcement actions only during mining and reclamation operations. If the site were no longer the scene of a "surface coal mining and reclamation operation," and it could not be by the time the bond is released, it would be difficult to see how section 521 could nevertheless continue to apply. The regulation, then, cannot be upheld or struck down solely by reference to Congress' intent, at least not as that intent was expressed in section 521.

NWF also argues that section 520 of the Act, the citizen suit provision, requires everlasting regulatory jurisdiction. Brief of Appellees at 21. That section gives any person having an interest that is, or may be, adversely affected a cause of action "against ... any ... person who is alleged to be in violation of ... this subchapter." 30 U.S.C. § 1270. NWF appears to believe that if a post-bond release site is no longer a "surface coal mining and reclamation operation" subject to regulation under section 521, then the former operator of the site could not be subject to the civil suit provisions of section 520. We have trouble following NWF's argument. Congress may or may not have intended that citizens'

suits could be brought at any time after operations ceased, a matter about which we express no opinion. However, nothing in the regulation at issue even applies to section 520 citizens' suits. *See* 53 Fed.Reg. 44,358 (1988).[6] And Congress gave no indication that section 520 should control the rest of the Act. It is therefore of no moment that citizens' suits might be unconstrained by any statute of limitations.

■ Because the Act "does not evince a clear congressional intent on the issue" whether regulatory jurisdiction may terminate, "the question becomes whether the Secretary's regulation is based on a permissible interpretation of the Act." *National Wildlife Fed'n v. Lujan*, 928 F.2d 453, 459 (D.C.Cir.1991). NWF has two fallback positions. First, even if Congress did not expressly require perpetual regulatory jurisdiction, the regulation is not a reasonable interpretation of the Act. In support, NWF cites instances in which OSMRE has re-asserted jurisdiction after a state authority has improperly released a bond.[7] Second, NWF argues that the existence of such cases, and OSMRE's practice of re-asserting jurisdiction when necessary, render this regulation an arbitrary and capricious change from prior practice. *Id.* The district court accepted these arguments, at least in part, stating that "it would be better for the government to have the power to deal" with violations coming to light after bond release. 31 Env't Rep.Cas. (BNA) at 2041.

The court's point is not well-taken. The confusion engendered by the prior policy necessitated the instant rulemaking. It cannot be "arbitrary and capricious" to formulate a new policy when faced with clear evidence (evidence cited by NWF here) of the inadequacy of the old one. More importantly, the regulation itself clearly

6. Counsel for the Secretary reaffirmed this interpretation at oral argument, stating that the Secretary has not addressed the status of citizen suits, and that the issue is still open. We further note that because the citizens' suit provision seems to speak to the district courts, not the Secretary, it is not clear that we would defer to the Secretary's interpretation were he to offer one. *See Adams Fruit Co. v. Barrett*, 494 U.S.

638, 110 S.Ct. 1384, 1390, 108 L.Ed.2d 585 (1990); *cf. Wagner Seed Co. v. Bush*, 946 F.2d 918, 922–924 (D.C.Cir.1991).

7. Bond release in such cases was "improper" because violations had existed at the time of release.

speaks to the concerns voiced by the district court and NWF. "[T]he regulatory authority *shall* reassert jurisdiction if ... the bond release ... was based upon fraud, collusion, or misrepresentation." 30 C.F.R. § 700.11(d)(2) (emphasis added). The question is whether the effect of the regulation comports with the statutory scheme. We believe that it does in light of the language of the regulation and the interpretation provided in both the preamble and the Secretary's brief here.

The preamble adopts an objective standard, stating that jurisdiction must be reasserted whenever "any reasonable person could determine" that fraud, collusion or misrepresentation had occurred. 53 Fed. Reg. 44,359 (1988). The Secretary's brief not only adopts this standard but also clarifies its scope:

> It is important to note in this connection that the filing of an application for bond release is in itself a representation that the operator has satisfied his reclamation obligations since an operator is not entitled to release from the bond unless he has met those obligations.... If an operator applies for release but has not fulfilled his obligations, he is guilty of misrepresentation by the very fact of making an application.

Brief for the Secretary at 27 n. 11. This is a reasonable way of implementing the Act's condition "[t]hat no bond shall be fully released until all reclamation requirements of this chapter are fully met." 30 U.S.C. § 1269(c)(3). The condition implies that *after* reclamation requirements are met, the bond *may* be "fully released." *Id.* When it turns out that the operator had in fact not fulfilled its reclamation obligations at the time of release, the Secretary's interpretation of "misrepresentation" ensures that jurisdiction "shall" be reasserted. 30 C.F.R. § 700.11(d)(2).

NWF apparently believes that because, under the regulations, it is possible for some operators to avoid liability for violations of the Act that are undiscovered or undiscoverable at the time of bond release, the regulations improperly fail to promote the Act's purpose: protection of the environment. The Act, however, was a compromise, designed both to protect the environment and to ensure an adequate supply of coal to meet the nation's energy requirements. *See* 30 U.S.C. § 1202(a), (f). The Secretary struck a reasonable balance between these competing interests in his interpretation of the Act (and, as noted above, responded to NWF's concerns about unabated environmental harm by adding 30 C.F.R. § 700.11(d)(2)).

The regulation also strikes a reasonable balance between the gradual increase, due to improving technology, in what legitimately may be demanded of an operator, and an operator's need for certainty regarding closed sites. "It would not be appropriate ... to require operators who had ... met the standards of their permits and the applicable regulatory program to ... reclaim [closed sites] in accordance with new technology." 53 Fed.Reg. 44,361 (1988).

In short, we find the regulation consistent with the goals of the Act and a reasonable interpretation of it. Furthermore, the factors supporting "the concept of terminating jurisdiction," 31 Env't Rep.Cas. (BNA) at 2039, buttress the Secretary's decision to use bond release as the point at which termination occurs. Until bond release the operator is still liable, and an attempt to terminate jurisdiction sooner would violate the terms of the Act. Nothing in the statute speaks in fixed temporal terms of regulation after bond release. Under the regulation that is the point at which the regulatory authority must "sign off" on the reclamation project. Bond release also has the advantage of being an independently identifiable point in time. For these reasons the Secretary's choice was not arbitrary or capricious. Accordingly, we reverse the district court's judgment insofar as it invalidated 30 C.F.R. § 700.11(d).

█ There remains only the question whether the portion of the district court's opinion dealing with 30 C.F.R. § 840.11(g)-(h) and 30 C.F.R. § 842.11(e)-(f) must be vacated to allow the Secretary to engage in what he terms "curative rulemaking." Brief for the Secretary at 29. The cited regulations sought to reduce the frequency of inspection at what the Secretary termed "abandoned sites." 31 Env't Rep.Cas.

(BNA) at 2042. The district court noted that the language of section 517(c), 30 U.S.C. § 1267(c),[8] expressly set a minimum inspection schedule for mining operations, and that the regulations fell below the minimum. Accordingly, the court held the regulations invalid. The Secretary concedes *the correctness of this reading of the statute.* Brief for the Secretary at 32. The Secretary wishes, however, to re-define "abandoned sites" to include only those sites where "a permit has either 'expired or been revoked.'" *Id.* (citations omitted). He asserts that such a reading is permissible in light of the "covered by each permit" language of section 517, and that the district court's ruling must be vacated to allow him to promulgate a new regulation.

We express no view about the validity of the Secretary's proposed reading. The significant point on this appeal is that the district court's decision does not stand in the way of the Secretary's adopting it in a new rulemaking. The district court expressly relied on the language of section 517(c), and applied it to the regulation's definition of "abandoned site." 31 Env't Rep.Cas. (BNA) at 2042, 2044. In light of the conflict between the Act and the regulation, the district court remanded the regulation to the Secretary "to be withdrawn *or revised.*" *Id.* at 2068 (emphasis added). We cannot understand why, in the face of this statement, the Secretary would think new rulemaking might be inconsistent with the district court's judgment.[9]

The portion of the district court's opinion striking down 30 C.F.R. § 700.11(d) is reversed. We decline to vacate the portion of the district court's opinion remanding to the Secretary 30 C.F.R. §§ 840.11(g)-(h) and 842.11(e)-(f).

*It is so ordered.*

8. "The inspections by the regulatory authority shall (1) occur on an irregular basis averaging not less than one partial inspection per month and one complete inspection per calendar quarter for the ... operation covered by each permit...." 30 U.S.C. § 1267(c).

9. An attempt to re-promulgate the same regulation would of course be governed by principles of *res judicata* and *stare decisis. Cf. Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988).