Beverly Ann WELLS, Respondent,

v.

Richard DUNN, Director, Division of
Aging, Missouri Department of
Social Services, Appellant.

No. WD 61354.

Missouri Court of Appeals,
Western District.

May 20, 2003.

Anne C. Reid, Jefferson City, MO, for Appellant.

John L. Patton, Columbia, MO, for Respondent.

Before: LOWENSTEIN, P.J., ULRICH, J. and STEELE, Sp.J.

HAROLD L. LOWENSTEIN, Judge.

After determining that she had misappropriated the personal funds of Chester Riggins, a 91–year–old nursing home resident under her care, the Division of Aging ("Division") of the Missouri Department of Social Services[1] notified Beverly Ann Wells of its intention, under section 198.090.15,[2] to place her name on the Department's official Employee Disqualification List (EDL)[3] for a period of one year. As authorized by section 660.315.5, Wells challenged this decision in a contested administrative proceeding. Following a one-day hearing in which testimony and evidence were presented and a transcript was made, the Director of the Division of Aging, Richard Dunn ("Director"), affirmed the Division's decision, issuing supporting findings of fact and conclusions of law as required by section 660.315.6. Wells then sought judicial review of the agency's decision in the Circuit Court of Howard County, as provided by section 536.100 to 536.140. The circuit court reversed the

---

1. The Director kindly informs the court that although the Division of Aging was transferred from the Department of Social Services to the Department of Health and Senior Services in 2001, *see* § 660.050.1, RSMo 2001, the caption of the case is correct since the transfer occurred after the events which triggered this case transpired.

2. Unless noted otherwise, all statutory references are to RSMo 2000.

3. The EDL is distributed to a wide variety of state agencies and private nursing home/health care-related entities, and no person, corporation or association who receives the EDL is permitted to employ any person whose name appears on it. § 660.315.11–12.

agency's final decision to place Wells's name on the EDL, and the Director now appeals the circuit court's judgment.[4] After reviewing the record and the law, the court holds that the Director misinterpreted and misapplied the law in making his final determination to place Wells's name on the EDL for having misappropriated Riggins's personal funds.

■■■ On appeal from an administrative agency decision in contested cases such as this, the court reviews the findings and decision of the agency, not the judgment of the circuit court. *Dishman v. Joseph,* 14 S.W.3d 709, 715 (Mo.App.2000); *Prenger v. Moody,* 845 S.W.2d 68, 73 (Mo.App.1992). The scope of review in such cases extends to a determination of whether the agency's action: (1) was in violation of constitutional provisions; (2) was in excess of its statutory authority or jurisdiction; (3) was unsupported by competent and substantial evidence upon the whole record; (4) was, for any reason, unauthorized by law; (5) was made upon unlawful procedure or without a fair trial; (6) was arbitrary, capricious or unreasonable; or (7) involved an abuse of discretion. § 536.140.2. While the court defers to the administrative agency's findings of fact, where its decision is based upon an interpretation, application, or conclusion of law, it is subject to this court's independent judgment. *Cmty. Bancshares, Inc. v. Sec'y of State,* 43 S.W.3d 821, 823 (Mo. banc 2001).

As acknowledged by both parties in their written submissions to the circuit court, the relevant facts in this case, which are stated in the light most favorable to the factual findings made by the Director, are fairly straightforward. In 1993, Wells began working at an extended care facility in Columbia, Missouri, known as The Williamsburg. She was originally hired as a licensed practical nurse, but in September 1998 became the facility's admissions coordinator of social services. In December 1998, Riggins took up residence at the facility, where he became acquainted with Wells and other staff members. During the first three months of 2000, while performing a reexamination of Riggins's finances and bank accounts to determine if he was meeting Medicaid spend-down eligibility requirements, the Division discovered that, during 1999, he had apparently given money to several employees of The Williamsburg. In particular, the Division learned that on October 27, 1999, Riggins wrote Wells a $100.00 check drawn on a bank account he independently maintained and managed.

Brenda Silvers, who had previously held Wells's position as admissions coordinator of social services, then commenced an investigation on behalf of The Williamsburg. When first questioned about the matter by Silvers, Wells initially denied having received the check because she was "scared" she had violated The Williamsburg's policies on reimbursements for personal purchases made by employees on behalf of residents. When Silvers insisted otherwise, Wells then admitted she had indeed received, endorsed, and deposited the $100.00 check into her own checking account, and that she had not reported having received the check from Riggins prior to being confronted about it. Wells explained that she had accepted the check from Riggins as reimbursement for the various small purchases she'd made for him, at her own expense, over the ten months or so they had been acquainted.[5]

4. As the party aggrieved by the agency decision under review, however, Wells filed the appellant's brief in this court. Rule 84.05(e).

5. Wells stated that this included running errands to buy Riggins such things as cough drops, candy, stamps, and meals from fast food restaurants.

She also admitted that she had never declared her receipt of the check in writing and did not retain any receipts for her expenses. At the conclusion of Silvers's investigation, Wells prepared drafts of two unsigned letters dated March 14, 2000, documenting the date she had received the check from Riggins and briefly outlining the circumstances under which she had accepted the check. She shortly thereafter signed a letter dated March 14, 2000, which had been prepared by Silvers based in large part on those drafts. On March 22, 2000, Silvers terminated Wells's employment for failing to abide by internal policies prohibiting employees of The Williamsburg from accepting payments from residents.

At about the same time, the Division was conducting its own investigation into the matter, which was led by facility surveyor Virginia Riehn and which resulted in essentially the same admissions by Wells recounted above. This investigation culminated with a finding that Wells had misappropriated Riggins's $100 and the resulting determination that her name would be placed on the EDL for a period of one year.

Wells then requested a contested administrative hearing on the matter, during which Silvers outlined The Williamsburg's policies for the handling and reimbursement of a resident's personal funds. Silvers testified that employees of The Williamsburg are prohibited from receiving gifts or gratuities from residents and explained that the preferred method for employees to make personal purchases on behalf of residents was to use their individual trust accounts, which are set up and administered by the facility.[6] Employees who purchase anything on behalf of a resident using the employees' own funds are required to obtain a receipt and are subsequently reimbursed by the Business Office out of the resident's individual trust account when the receipt is submitted. Silvers also testified that she had personally trained Wells concerning these reimbursement procedures, and Wells acknowledged being familiar with them.

On these facts and his application of Missouri law, the Director ordered that Wells's name be placed on the EDL for one year. The starting point for analysis is section 198.090.15, since it is the statute under which the Director claims authority to place Wells's name on the EDL. It provides:

> The department shall maintain the employee disqualification list and place on the employee disqualification list the names of any persons who have been finally determined by the department, pursuant to section 660.315, RSMo, to have misappropriated any property or funds of a resident while employed in any facility.

§ 198.090.15.

However, rather than undertaking the task of attempting to construe the key term "misappropriated" in section 198.090.15, the Director chose to rely on a different statute (§ 198.090.2) to support his order placing Wells's name on the EDL. Section 198.090.2 states, in relevant part:

> Any owner, operator, manager, employee, or affiliate of an owner or operator who receives any personal property or anything else of value from a resident, shall, if the thing received has a value of ten dollars or more, make a written statement giving the date it was received, from whom it was received, and its estimated value.

---

**6.** *See* 198.090.1(1)-(10), which authorizes nursing home operators to make available to residents individual trust accounts from which funds can be expended to meet their personal needs.

As best as can be gleaned from his findings and conclusions, the Director evidently reasoned that, since Wells had violated the mandatory written reporting provisions of section 198.090.2 by failing to submit the required statement to The Williamsburg's administrators until she was questioned by Silvers some four months after the fact, Wells had also, *ipso facto,* misappropriated Riggins's funds under section 198.090.15.

■ There are several serious problems with the Director's approach. Perhaps the most serious of them is that, unlike section 198.090.15, section 198.090.2 does not authorize the Division to place a person's name on the EDL upon determining that the person violated its provisions. "An administrative agency cannot infer a power from [a] statute simply because that power would facilitate the accomplishment of an end deemed beneficial." *Dishon v. Rice,* 871 S.W.2d 126, 128 (Mo.App.1994).

■ Moreover, before both the administrative hearing officer and the circuit court, Wells contended that she was exempt from the written reporting requirements of section 198.090.2 by virtue of the fact that the $100.00 check was a payment from Riggins for the sundry errands and personal services she had rendered to him. She relied on section 198.090.4, which provides:

> Subsections 2 and 3 of this section shall not apply if the property or other thing of value is held in trust accordance with subsection 1 of this section, is received in payment for services rendered or pursuant to the terms of a lawful contract, *or* is received from a resident who is related to the recipient within the fourth degree of consanguinity or affinity. (Emphasis added).

The Director dismissed Wells's claim that she was not required to report her receipt of the $100.00 check in writing by virtue of section 198.090.4 as follows: "The exclusion from the reporting requirement offered in subsection 4 only applies when subsection 1 has been complied with.... [N]one of the subsection 1 parenthetical requirements were met by [Wells]." This reading of section 198.090.4 is simply incorrect, as the statute clearly uses the disjunctive *or* to separate its independent clauses. Furthermore, as the Director concedes in his brief, section 198.090.1 does not even apply to Wells, since it governs the establishment and maintenance of individual trust accounts by a nursing home "operator."[7] While we obviously cannot, on this record, declare that Wells established her section 198.090.4 defense as a matter of law, under the circumstances of this case we do hold that the Director misinterpreted the law in summarily rejecting it.

■ Finally, as acknowledged by the Director in his decision, the Division had the burden of establishing, by a preponderance of the evidence, a *prima facie* case that Barbara Ann Wells misappropriated the funds of Chester Riggins while Wells was employed by The Williamsburg. It is readily apparent that a definition of the critical term "misappropriated" as used in section 198.090.15 is essential to a correct interpretation of the statute and the proper disposition of this case. While that word (and the derivative terms "misappropriate" and "misappropriation") appears in several Missouri statutes and regulations governing the nursing home industry, it is not expressly defined therein, nor is it defined in applicable Missouri case law. Since the General Assembly provided no explicit definition of the term, it is to be accorded its plain and ordinary meaning as found in the dictionary. *Asbury v. Lombardi,* 846 S.W.2d 196, 201 (Mo. banc

---

7. Wells was clearly not an "operator" of The Williamsburg. *See* § 198.006(12).

1993); *Kansas City Star Co. v. Fulson,* 859 S.W.2d 934, 939 (Mo.App.1993). The word "misappropriate" is a verb meaning "to apply to illegal purposes; to appropriate dishonestly for one's own use: embezzle." Webster's Third New International Dictionary 1442 (1993). Other dictionaries offer similar definitions. *See, e.g.,* VI The Oxford English Dictionary 495 (1933) ("To appropriate to wrong uses; chiefly, to apply dishonestly to one's own use money belonging to another"); BLACK'S LAW DICTIONARY 1013 (7th ed.1999) (defining "misappropriation" as the "application of another's property or money dishonestly to one's own use").

Common to all these definitions is the idea that misappropriation involves the dishonest diversion of the money or property of another to one's own use. Yet the Director's findings of fact and conclusions of law upholding the Division's determination to place Wells's name on the EDL are devoid of any such findings.[8] In particular, after applying the facts found by the Director in this case to the applicable law, the court holds that although Wells may indeed have violated the reporting requirements of section 198.090.2, she did not misappropriate Riggins's personal funds in the sense the term is employed in section 198.090.15. The agency's conclusion in this case was based on an error of law. The judgment of the circuit court reversing the Director's order placing Barbara Ann Wells's name on the Department's Employee Disqualification List under section 198.090.15 is, therefore, correct, and its judgment reversing the agency determination affirmed.

One matter remains: Wells timely filed a request for attorney's fees and costs under Local Rule XXIX. § 536.087. The trial court had stayed a decision on application to it, pending determination of the case on appeal. Therefore, the application of Wells under section 536.087 is remanded to the circuit court for the sole purpose of a fee and cost decision. The court is to be guided by this court's recent decision in *Pulliam v. State,* 96 S.W.3d 904 (Mo.App. W.D.2003).

All concur.

---

**8.** For example, the Director did not find that Wells fraudulently or dishonestly procured the check, that she did not in fact run personal errands for Riggins on which she purchased various items for him using her own funds, or that she otherwise diverted to her own use personal funds of Riggins to which she had no legitimate claim. Indeed, without substituting our judgment for that of the Director on factual issues, we note that the record contains several indications to the contrary.