STATE of Missouri, ex rel. NIXON, et al., Appellant,

v.

ALTERNATE FUELS, INC., Respondent.

No. WD 65079.

Missouri Court of Appeals, Western District.

Nov. 8, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 20, 2005.

Application for Transfer Denied Jan. 31, 2006.

See also 158 S.W.3d 811.

Shelley A. Woods, Jefferson City, MO, for Appellant.

Daniel P. Card II, Jefferson City, MO, for Respondent.

Before VICTOR C. HOWARD, P.J., JAMES M. SMART and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

FACTUAL AND PROCEDURAL BACKGROUND

Missouri Land Reclamation Commission (MLRC) under the Department of Natural Resources (DNR) rendered administrative penalties totaling $311, 940.00 against Alternate Fuels Inc. (AFI), a Kansas corporation. AFI was a permitee or holder of a permit issued by the commission to conduct surface mining and reclamation operations. AFI held three permits for the Blue Mound Mine issued by the MLRC: No.1990–01, No.1991–02, and No.1996–01.[1] AFI operated the Blue Mound Mine until October 1996, when Cimarron Energy, L.L.C. (Cimarron) became the operator.

1. Cimmaron was the sole operator under this permit because it belonged to Cimmaron at the inception. AFI operated under the other two until the company lost its assets in 1993.

AFI continued to hold the three permits in its name and remained as guarantor of the reclamation bonds. All surface mining at the Blue Mound Mine ceased in November 1999. All three of the issued permits had expired by December 2001. The assessments in dispute were issued before and after the permits expired.

*The Procedure of Missouri Land Reclamation Program*

A DNR inspector performs unannounced inspections regularly on permitted lands to ensure compliance with the land reclamation program. The inspector issues a notice of violation for noncompliance with the permit and/or the law, rules, and regulations. If the operator disagrees with the notice, he or she can request an informal conference or a hearing within thirty days of receipt of the notice. If the operator requests an informal conference and disagrees with the decision of the director, the operator can request a hearing within thirty days of that decision. Assuming the violation has not been abated within the set time frame, the inspector will issue a cessation order. If the operator disputes the order, he or she may pursue the same recourse that is offered when a notice of violation is disputed.

After each notice or order is issued, the inspector will issue a proposed amount for a penalty assessment.[2] The inspector, when deciding the amount, factors into the assessment formula both the level of compliance and the time for compliance, which are different based on the nature of the violation. If the operator disputes the proposed assessment amount, the operator has the same recourse available to him or her as mentioned above. A bond, however-

er, in the amount of the penalty must be posted to obtain a hearing to dispute the penalty, which bond is forfeited if the operator loses the dispute. The operator may dispute both the underlying violation and the penalty at this hearing. A dispute as to the penalty will not be heard if the operator does not post a bond. Therefore, the operator would have to pay the penalty if he or she had previously only contested the underlying violation.

After expiration of the appeal time frames as to both notices and cessation orders, the inspector[3] will make a presentation to the MLRC and will ask the MLRC to confirm the proposed assessment. Upon approval of the proposed assessment, the MLRC sends the operator an order of assessment that must be paid within thirty days of receipt. The MLRC, as a last resort for compliance, will seek revocation of the permit and forfeiture of the bond when the operator or permittee has developed a pattern of program protocol violations.

*The Procedure as Applied to AFI*

Several inspections of AFI's permitted lands revealed that the lands did not comply with the permit or the reclamation law, rules, and regulations. The inspector issued several notices of violations specifying due dates for compliance. Some of the violations were not abated or not abated timely by AFI, according to the inspector. As a result, the inspector entered several cessation orders. A pattern of these violations led the MLRC to enter a show cause order on September 14, 1998, against AFI as to why its permits should not be re-

2. An automatic penalty is assessed for both the notice and the order regardless of compliance. According to the director, penalty assessments do not create compliance, although faster compliance will create lower penalties.

3. In the absence of the inspector, someone else will read the notice to make the presentation.

voked. The permits[4] were not revoked subject to a Consent Agreement in 1999 between AFI and the MLRC. The inspector issued subsequent notices of violations upon discovery that AFI was violating other rules or the same rules on other permitted lands, leading the MLRC to enter a second show cause order in September 2001.[5] AFI contested a few these notices. Mr. Larry Cohen of MLRC stated that none were timely requested.[6] Subsequently, penalty assessments for the notices and cessation orders were issued against AFI. These underlying notices and cessation orders for the show cause order are the same for the currently disputed penalties.[7] The majority of the violations involve reclamation: control erosion, failure to backfill and grade within the regulatory time frames provided, lack of plan to address the acidity and toxicity of soils exposed, and failure to report water quality. A few were also issued because AFI failed to reply or maintain liability insurance after the permit expired.

All of the notices and orders were sent to Mr. Larry Pommier listing Cimmaron as the operator. Mr. Pommier signed the acknowledgement forms for service. Mr. Pommier is AFI's president, but he is not an owner.[8] AFI, however, has not been involved with the mine since 1996, except for being the permittee for the Blue Mound Mine. In October 1996, Cimmaron Energy, LLC became the operator by acquiring all secured assets of the AFI's bankruptcy estate. It is unclear whether AFI remains an operator.[9] The MLRC, however, has acknowledged AFI as the permittee and Cimmaron as the operator.[10] The MLRC has a list of names of Cimmaron owners' that includes Mr. Pommier as a one-percent managing member of Cimmaron. Nevertheless, Mr. Pommier is the only official representative that the staff director of the Missouri Land Reclamation Program has spoken with during the three or four times he has visited the Blue Mound Mine.[11] The majority of these orders, notices, and penalty assessments was issued after the surface mining permits had expired and after mining operations at the Blue Mound Mine had ceased.

4. The permits were not expired at that time. The court found that AFI breached the agreement and ordered payment of the penalties. The decision was affirmed in *State ex rel. Nixon v. AFI*, 158 S.W.3d 811 (Mo.App. S.D. 2005).

5. AFI disputed P1–02–72, and shortly thereafter the MLRC issued show cause why not to revoke the permit.

6. It is in dispute as to whether AFI waived the right to dispute the underlying violations by failing to appeal or contest the assessments. AFI asserts that it is still waiting on a hearing, but the State denies it. Hearings can remain pending for months or even a year because the MLRC does not guarantee when a hearing will be commenced.

7. The State has stipulated that several of these notices and orders are cited in the second show cause order. The hearing was conducted in April 2003, but AFI did not know its outcome as of the July 9, 2004, hearing. A new rule prevents anyone besides the MLRC from knowing about recommendations to the MLRC. The State contends, however, that the second show cause order will not have a bearing on penalty assessments.

8. Secured creditors replaced AFI's management with Mr. Pommier in 1993.

9. Over the course of litigation, the determination of whether AFI is legally an operator was before the MLRC in a hearing. The State has not alleged an alter ego theory. The statute provides separate, distinct definitions for operator and permittee.

10. MLRC is not clear as to who owns Cimmaron.

11. AFI asserts that both Mr. Pommier and Mr. John Wormack spoke to program personnel as members of Cimmarron.

AFI did not renew the permits, and the State advised Mr. Pommier that he did not have to renew them. Reclamation was the only activity occurring on the Blue Mound Mine in December 2001. AFI posted the bonds for the permit and is liable for reclamation. The federal government has inspected and enforced the land reclamation over the Blue Mound Mine for the last year and has issued no violations against AFI.

Neither AFI nor Cimmaron has paid any of the penalties that were due respectively thirty days after receipt of each MLRC the orders of assessment.[12] The MLRC requested that the attorney general seek collection of each the penalties, interest, and attorney's fees from AFI in a civil action. The attorney general filed a petition in the Circuit Court of Cole County, Missouri, naming AFI as the defendant. Cimmaron was not a party. The trial judge ruled in favor of AFI, and the State appeals.

### LEGAL ANALYSIS

■■■ The standard of review for a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the court's decision not to enforce the administrative penalties, unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. Decisions, however, that involve statutory interpretation are reviewed de novo.[13] *Buttress v. Tay-*

*lor*, 62 S.W.3d 672, 679 (Mo.App. W.D. 2001) (citations omitted).

■■■ Our purpose is to ascertain the legislative intent when construing statutes. *Dir., Mo. Dep't of Pub. Safety v. Murr*, 11 S.W.3d 91, 96 (Mo.App. W.D.2000) (citations omitted). Accordingly, we interpret the express language of the statute consistent with its plain and ordinary meaning whenever possible. *Id.* "In interpreting a statute we are required to give meaning to each word, clause, and section of the statute whenever possible." *Buttress*, 62 S.W.3d at 679. The rules of statutory construction are applied only after a finding that the statute is ambiguous. *Smith v. Shaw*, 159 S.W.3d 830, 834 (Mo. banc 2005). A statute is ambiguous if the legislature's intent is not ascertainable after relevant language has been given its plain and ordinary meaning. *Murr*, 11 S.W.3d at 97. Regulations are subject to the same principles of statutory construction. *Teague v. Mo. Gaming Comm'n*, 127 S.W.3d 679, 685 (Mo.App. W.D.2003).

The issue is whether the MLRC can enforce reclamation obligations against an expired permittee engaged in reclamation by issuing notices of violations and accompanying cessation orders and subsequently assessing penalties. The State argues that the MLRC has the regulatory authority to assess administrative penalties against an expired permittee because the legislature intended it and the regulations provide for it. AFI responds that the MLRC's au-

12. AFI did not pay because it was waiting for the results of the show cause hearing in which the majority of the underlying violations for the penalties was being decided.

13. This analysis requires a review of the MLRC's decision to issue notices and orders and assess penalties against an expired permittee. To the extent that this decision this decision could be construed as an interpretation of the statute by the agency; the follow-

ing is added to our standard of review: "[T]he interpretation and construction of a statute by an agency charged with its administration is entitled to great weight. Nonetheless, this Court exercises independent judgment and must correct erroneous interpretations of the law." *State ex rel. Sprint Mo., Inc. v. Pub. Serv. Comm'n*, 165 S.W.3d 160, 164 (Mo. banc 2005) (internal citations and quotations omitted).

thority to assess penalties is limited to those specifically listed in the statute, which do not include an expired permittee.

*Lack of Jurisdiction*

The State contends that the legislature intended for the MLRC to have regulatory authority against expired permittees that are in violation of their reclamation plan absent statutory language limiting penalty assessments to permittees with unexpired permits. The penalty assessment statute grants the MLRC the authority to assess penalties against permittees for reclamation plan violations. § 444.870.[14] The DNR regulation, 10 CSR 40–6.010(4)(B)2, states that the reclamation plan remains an obligation regardless of expiration, termination, revocation, or suspension of a permit. The State contends that AFI still had reclamation obligations, and the penalties against AFI were for reclamation plan violations. Therefore, MLRC acted within the statutory authority given and did not exceed its jurisdiction. The State further argues that the statute limiting permits to five years is only informative and does not restrict MLRC's jurisdiction to regulate reclamation.

AFI claims that MLRC has no statutory authority to regulate a permittee beyond the permit's life, which is a five-year period. AFI states that the life of the permit is a time limit imposed on the commission's regulatory authority, which by statute is jurisdictional. *State ex rel. Laidlaw Waste Sys., Inc. v. City of Kansas City, Mo.*, 858 S.W.2d 753, 756 (Mo.App. W.D.1993). *Laidlaw* and its progeny, however, are inapplicable to the issue in this case because those cases involve the construction of statutory provisions that impose time limits on direct administrative agency actions. The statutory provisions AFI references lack such language. Rather, the statute articulates the time limit for permits and enumerates the permittee's duties. § 444.815.

AFI further argues that the legislature's silence as to the extension of the agency's jurisdiction is evidence that the life of the permit is the jurisdictional time frame by which the MLRC is authorized to act. To support its argument, AFI cites various other statutes in which the legislature enumerates agency or commission powers to penalize persons beyond the expiration of a license or permit. AFI further contends that the legislature did not intend to regulate expired permittees engaging in reclamation because the statute requires reclamation to be contemporaneously completed with mining operations, as evidenced by regulations setting forth schedules for required reclamation activities.

■ MLRC did have jurisdiction over AFI because AFI was a non-renewed permittee with unfulfilled reclamation obligations. A commission's power to act is governed by the enabling statute. *Laidlaw Waste Systems*, 858 S.W.2d at 754. It cannot exceed its authorized powers just because it would produce a beneficial result. *Wells v. Dunn*, 104 S.W.3d 792, 796 (Mo.App. W.D.2003). The penalty statute and the cited regulation do not expressly grant the MLRC power to regulate expired permittees. That same regulation, however, has the language that suspends the requirement for permit renewal for those engaging in only reclamation. We find it, therefore, appropriate to construe the regulation rather than the statute granting the MLRC power to assess penalties.

■ The Missouri Land Reclamation Program is a federally-approved state program that complies with the federal Surface Coal Mining Control and Recla-

---

14. Unless otherwise indicated, all statutory references are to RSMo (2000).

mation Act (SMCRA) of 1977. It, therefore, must be no less effective than the federal program. 30 U.S.C. § 1253 (1982). In addition, the Missouri legislature mandates in the Surface Coal Mining Law that whatever rules and regulations adopted to accomplish the reclamation of mined lands "be no more stringent than the comparable federal regulations promulgated by the Office of Surface Mining Reclamation and Enforcement under P.L. 95–87, and the Federal Surface Coal Mining Control and Reclamation Act of 1977." § 444.800.4. This provision manifests the Missouri legislature's intent to mirror the federal act, which is intended "to protect the environment from the adverse effects of surface coal mining while ensuring an adequate supply of coal to meet the nation's energy requirements" by empowering the Secretary to "promulgate regulations establishing regulatory procedures and performance standards 'conforming to the provisions of' the Act." *Nat'l Wildlife Fed'n v. Lujan*, 950 F.2d 765, 767 (D.C.Cir.1991). Missouri's permit system models the federal system, which permit system is the primary means to ensure compliance with the Act. *Id.*

The regulation cited by the State, 10 CSR 40–6.010(4)(B)2, is similar to federal regulation 30 C.F.R. § 773.4(a) (2005), which reads in pertinent part:

A permittee need not renew the permit if no surface coal mining operations will be conducted under the permit and solely reclamation activities remain to be done. Obligations established under a permit continue until completion of sur-

face coal mining and reclamation operations, regardless of whether the authorization to conduct surface coal mining operations has expired or has been terminated, revoked, or suspended.

Obviously, the federal regulation does not expressly prohibit or grant the MLRC the authority to assess penalties against a non-renewed permittee. The parties have not provided nor have we discovered Missouri cases interpreting the regulatory language: "obligations established under a permit continue." [15] We agree with the State that the MLRC has the power to assess penalties against expired permittees engaged in reclamation because the Office of Surface Mining Reclamation and Enforcement (OSMRE) expressly preserves regulatory jurisdiction over non-renewed permits in its discussion of the final rule. Use of interpretations by federal authority in the construction of state law that adopts federal provisions is appropriate persuasive authority. *Mehrer v. Diagnostic Imaging Ctr., P.C.*, 157 S.W.3d 315, 321 (Mo. App. W.D.2005)(finding that federal interpretations of a federal rule ·that shared similar language with a Missouri rule was guidance for the interpretation of the Missouri rule).

The discussion of the final rule located in the Federal Register specifically addresses the issue of whether regulatory authority over permittees engaging in reclamation with non-renewed permits continue. Some commenters doubted whether the OSMRE could enforce reclamation requirements and conditions of an expired permit. The commenters stated that "ex-

**15.** We have found decisions from other jurisdictions addressing whether enforcement jurisdiction continues beyond the permit expiration. The Kentucky Court of Appeals found that "both the obligation to reclaim the site and the cabinet's enforcement jurisdiction continue until such time as the required reclamation is completed." *Natural Res. & Envtl.*

*Prot. Cabinet v. Whitley Dev. Corp.*, 940 S.W.2d 904, 908 (Ky.Ct.App.1997). The Supreme Court of Vermont found that enforcement authority ended with the expiration of the permit as long as no other activity-triggering jurisdiction was present, such as development activities. *In re Huntley*, 865 A.2d 1123, 1126 (Vt.2004).

pired" permit would bring the validity of the permit into question. The OSMRE responded that "the only thing which expires is the authorization to conduct surface coal mining operations ... [a]lthough a permittee may choose not to renew the permit ... the permit and all reclamation obligations under the regulatory program remain in *full force and effect* for all reclamation requirements until final bond release." 54 F.R.13814, 13815 (Apr. 5, 1989) (emphasis added). "Full force and effect" signifies that the regulatory policies are still intact even though the requirement for permit renewal is suspended. OSMRE stated that "[a]ny revisions to the reclamation plan following expiration of the permit must comply with the requirements of 30 CFR 774.11." 54 F.R. at 13817. This section of the code refers to federal enforcement provisions listing penalties as a means of enforcement in 30 C.F.R. § 845.1 (2005).

This sentiment is most evident in the discussion about OSMRE's decision not to adopt part of the proposed rule. The proposed rule had a sentence that read, "any person conducting reclamation activities pursuant to requirements of a permit, even if the permit is no longer extant must comply with all applicable provisions as a *permittee*." 54 F.R. 13814, 13818 (emphasis added). OSMRE did not adopt the sentence as part of the final rule because of the language stating "obligations established under permit continue" already embodied the notion that all provisions remain applicable to a permittee. *Id.* OSMRE further explained that the "reclamation obligations under the applicable

State or Federal program ... remain in effect and are enforceable regardless of whether the 5–year permit term has lapsed," *Id.* at 13819, and regulatory jurisdiction only expires over reclaimed land according to 30 C.F.R. § 700.11(d) (2005).[16] "The permittee whose authorization to conduct surface coal mining operations has expired but who still has reclamation obligations to complete according to the permit must conduct those reclamation activities as the 'permittee'." *Id.* Because OSMRE pronounces that all provisions are still applicable to the non-renewed permittee engaging in reclamation, "[a]ll enforcement policies continue as before," *Id.* at 13818, and because the Missouri legislature intended to follow the federal interpretation of the Surface Coal Mining Law, the penalty provisions still apply to AFI.

Accordingly, MLRC was correct in treating AFI as a permittee. AFI was still a permittee according to the regulation because AFI was an expired permittee with reclamation occurring on its permitted land, the Blue Mound Mine, which ceased in December 2001. The notices of violations and cessation orders pertaining to permit obligations issued between 2000 and 2002 are valid as long as there was reclamation activity on the land. All violations and cessation orders involving reclamation are valid regardless of reclamation activity because regulatory authority as to reclamation does not terminate until the bonds are released. 10 CSR 40–7.021(C); 30 C.F.R § 700.11(d). Bonds were not released to AFI or Cimarron, so regulatory jurisdiction continues. The fact that Cimmaron was the operator, as stipulated

16. Reclamation liability for a site (entire permit area or increment within the area) terminates when the bonds are released or the state has made a written determination thereof. *Appolo Fuels, Inc. v. Office of Surface Mining Reclamation & Enforcement,* 125 IBLA 369 (1993) (holding that OSMRE lacked jurisdic-

tion to issue notices of violations and cessation orders against operator when there was a final bond release on the permitted lands, the permit and the subsequent liability period had expired, and reclamation activities were completed).

to and evidenced on every notice of violation and cessation order, does not change the analysis because penalties can be assessed against permittees under section 444.870. The MLRC, therefore, had jurisdiction to issue violations and cessation orders against AFI and subsequent penalty orders.

The trial judge's ruling that the MLRC lacked jurisdiction to assess notices and accompanying orders against AFI after the permit expiration was an erroneous declaration and application of the law. We, therefore, reverse and remand the case to the trial court for further proceedings consistent with this opinion.

VICTOR C. HOWARD, P.J., and JAMES M. SMART, J. concur.